```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
JESSICA ROSARIO,                    :
                Plaintiff,          :
                                    :        15 Civ. 8078 (AJP)
        -against-                   :
                                    :        OPINION AND ORDER
CAROLYN W. COLVIN, Commissioner of  :
Social Security,                    :
                Defendant.          :
-----------------------------------x
```

**ANDREW J. PECK, United States Magistrate Judge:**

Plaintiff Jessica Rosario brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security denying her Supplemental Security Income ("SSI"). (Dkt. No. 1: Compl.) Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No. 12: Notice of Rosario Mot.; Dkt. No. 14: Notice of Comm'r Mot.) The parties have consented to decision of this case by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 9.)

For the reasons set forth below, the Commissioner's motion is DENIED, Rosario's motion is GRANTED, and this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

## FACTS

**Procedural Background**

Rosario applied for SSI on May 21, 2012, at age 44, alleging disability since January

2

1998, due to back pain stemming from a 1995 car accident, bipolar disorder, depression, arthritis and osteoporosis. (Dkt. No. 10: Administrative Record ("R.") 43-45, 72, 403-07.) The Social Security Administration ("SSA") denied Rosario's initial application on August 1, 2012 (R. 84-88), and on September 10, 2012 she requested a hearing (R. 90-92). On July 16, 2014, Administrative Law Judge ("ALJ") Jack Russak held a hearing on Rosario's application. (R. 40-71.) On July 23, 2014, ALJ Russak issued a decision denying Rosario's claim for SSI. (R. 18-34.) The Appeals Council denied review on September 17, 2015, making ALJ Russak's ruling the Commissioner's final decision. (R. 1-5.)

**Evidence and Testimony Overview**

Rosario, born on February 18, 1968, currently is 48 years old and was 29 years old at the alleged January 1998 onset date of her disability. (R. 72.) At the hearing before ALJ Russak, Rosario testified that she lives at home with her husband and four other family members. (R. 47, 50.) She had four children, ages 24, 23, 19, and 18, as of July 2014. (R. 47.) Rosario attended two years of college in the United States and last worked in 1997 as a receptionist, but had to stop due to her back pain. (R. 43, 51-52.)

Rosario testified that she feels pain on her side, running from her back down her legs. (R. 53.) She has difficulty dressing herself because her hands get swollen. (R. 48.) She showers sitting down (R. 49) and "tend[s] to fall a lot and lose [her] balance." (R. 53-54.) She stated that she "can't walk a lot because [she] lose[s] balance and [has] a lot of pain." (R. 54.) She testified that she can stand for "[a]bout an hour" at one time and cannot sit for "too much" time at once. (R. 55.) She can only lift 10 pounds and has trouble concentrating due to pain. (R. 57-58.) She did not own a cane on the date of the hearing but stated that her doctor was getting her one "for the next appointment." (R. 54-55.)

Rosario stated that she spends most of the day laying down due to pain and must stay in bed for about two days a week when the pain is most severe. (R. 56, 58.) She helps cook and she sometimes goes food shopping, cleans the dishes, does laundry sitting down and cleans the apartment. (R. 55-56.)

Rosario testified that her depression causes her to cry, makes her unable to "be next to people," and "doesn't let [her] do nothing." (R. 59-60.) If she starts something, she has to stop and cannot finish things. (R. 60.) She noted that the feelings of sadness she experiences are caused by her pain. (Id.)

From 2009 to 2014 Rosario was treated by two primary care physicians at Montefiore Medical Center, Drs. Calie Santana and Jonathan Swartz, for her physical conditions and depression. (R. 44-45, 52-54, 410.)[1] She takes the following medications: Flonase, Claritin, Hydrocortisone, Tylenol, Citalopram, Proair, Aerochamber, Endocet, and Naprosyn. (R. 461, 523-24.) The medication helps with her pain, but she has side effects of dizziness from the Naprosyn. (R. 53, 58.)

Vocational expert Julie Andrews testified before ALJ Russak. (R. 60-65.) ALJ Russak asked her to assume a hypothetical person of Rosario's age, education and work experience who could engage in sedentary work but with no exposure to moving machinery and must avoid irritants such as fumes, odors, dust, gases and exposure to chemicals. (R. 62-63.) The vocational expert identified three jobs that such a hypothetical person could perform: preparer, brake lining coater, and label pinker. (R. 63-64.)

---

[1]  Because the Court's decision is based on issues as to residual functional capacity at the fifth step of the analysis, it is not necessary to summarize the medical evidence of record.

**ALJ Russak's Decision**

ALJ Russak determined that Rosario "has not been under a disability, as defined in the Social Security Act, since May 21, 2012, the date the application was filed." (R. 34.) At step one of the disability analysis, ALJ Russak noted that Rosario has not engaged in substantial gainful activity since filing her application for SSI. (R. 26.) At step two, ALJ Russak found that Rosario "has the following severe impairments: degenerative disc disease, upper respiratory infection, depression, anxiety, and bipolar disorder." (R. 26.) At the third step, the ALJ found that Rosario's severe impairments do not meet the threshold of one of the listed impairments. (R. 27.) ALJ Russak next determined that Rosario has the "residual functional capacity [("RFC")] to perform less than a full range of sedentary work" with additional nonexertional limitations: Rosario "must avoid exposure to moving machinery, unprotected heights, or driving vehicles. [Rosario] must avoid concentrated exposure to extreme heat or cold, wetness or humidity, irritants such as fumes, odors, dust and gases, poorly ventilated areas, and exposure to chemicals." (R. 29.) At step four ALJ Russak found that Rosario "has no past relevant work." (R. 33.) Finally, at step five, ALJ Russak noted that Rosario is classified as "a younger individual age 45-49" who "has a marginal education and is able to communicate in English." (R. 33.) ALJ Russak held that based upon the vocational expert's testimony, which took into account Rosario's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Rosario] can perform." (R. 33-34.) Specifically, he identified the following occupations: preparer, brake lining coater, and label pinker. (R. 34.) ALJ Russak therefore denied Rosario's claim for SSI. (R. 34.)

**ANALYSIS**

I.      **THE APPLICABLE LAW**

   A.      **Definition of Disability**

A person is considered disabled for Social Security benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see, e.g., Barnhart v. Thomas, 540 U.S. 20, 23, 124 S. Ct. 376, 379 (2003); Barnhart v. Walton, 535 U.S. 212, 214, 122 S. Ct. 1265, 1268 (2002); Impala v. Astrue, 477 F. App'x 856, 857 (2d Cir. 2012).[2/]

> An individual shall be determined to be under a disability only if [the combined effects of] his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see, e.g., Barnhart v. Thomas, 540 U.S. at 23, 124 S.

---

[2/]    See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Surgeon v. Comm'r of Soc. Sec., 190 F. App'x 37, 39 (2d Cir. 2006); Rodriguez v. Barnhart, 163 F. App'x 15, 16 (2d Cir. 2005); Malone v. Barnhart, 132 F. App'x 940, 941 (2d Cir. 2005); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

Ct. at 379; Barnhart v. Walton, 535 U.S. at 218, 122 S. Ct. at 1270.[3/]

In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).[4/]

**B.     Standard of Review**

A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence" in the record as a whole to support such determination.  E.g., 42 U.S.C. § 405(g); Giunta v. Comm'r of Soc. Sec., 440 F. App'x 53, 53 (2d Cir. 2011).[5/]  "'Thus, the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision.'"  Morris v. Barnhart, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y.

---

[3/]    See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x at 111; Betances v. Comm'r of Soc. Sec., 206 F. App'x at 26; Butts v. Barnhart, 388 F.3d at 383; Draegert v. Barnhart, 311 F.3d at 472; Shaw v. Chater, 221 F.3d at 131-32; Rosa v. Callahan, 168 F.3d at 77; Balsamo v. Chater, 142 F.3d at 79.

[4/]    See, e.g., Brunson v. Callahan, No. 98-6229, 199 F.3d 1321 (table), 1999 WL 1012761 at *1 (2d Cir. Oct. 14, 1999); Brown v. Apfel, 174 F.3d at 62.

[5/]    See also, e.g., Prince v. Astrue, 514 F. App'x 18, 19 (2d Cir. 2013); Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 551 U.S. 1132, 127 S. Ct. 2981 (2007); Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 61 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam); Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983).

July 26, 2002) (Peck, M.J.).[6/]

The Supreme Court has defined "substantial evidence" as "'more than a mere scintilla [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); accord, e.g., Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 773-74.[7/]  "[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S. Ct. 1207 (1983).  The Court must be careful not to "'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).[8/]

The Court, however, will not defer to the Commissioner's determination if it is "'the product of legal error.'" E.g., Duvergel v. Apfel, 99 Civ. 4614, 2000 WL 328593 at *7 (S.D.N.Y. Mar. 29, 2000) (Peck, M.J.); see also, e.g., Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012); Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Tejada v. Apfel, 167 F.3d at 773 (citing cases).

---

[6/]   See also, e.g., Florencio v. Apfel, 98 Civ. 7248, 1999 WL 1129067 at *5 (S.D.N.Y. Dec. 9, 1999) (Chin, D.J.) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." (quotations & alterations omitted)).

[7/]   See also, e.g., Halloran v. Barnhart, 362 F.3d at 31; Jasinski v. Barnhart, 341 F.3d at 184; Veino v. Barnhart, 312 F.3d at 586; Shaw v. Chater, 221 F.3d at 131; Brown v. Apfel, 174 F.3d at 61; Perez v. Chater, 77 F.3d at 46.

[8/]   See also, e.g., Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012); Veino v. Barnhart, 312 F.3d at 586.

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920; see, e.g., Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003); Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291 (1987). The Supreme Court has articulated the five steps as follows:

> Acting pursuant to its statutory rulemaking authority, the agency has promulgated regulations establishing a five-step sequential evaluation process to determine disability. If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further. [1] At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [2] At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [3] At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [4] If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. [5] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. at 24-25, 124 S. Ct. at 379-80 (fns. & citations omitted).[9]

The claimant bears the burden of proof as to the first four steps; if the claimant meets the burden of proving that he cannot return to his past work, thereby establishing a prima facie case, the Commissioner then has the burden of proving the last step, that there is other work the claimant can perform considering not only his medical capacity but also his age, education and training. See,

---

[9] Accord, e.g., Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 774; see also, e.g., Jasinski v. Barnhart, 341 F.3d at 183-84; Shaw v. Chater, 221 F.3d 132; Brown v. Apfel, 174 F.3d at 62; Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); Perez v. Chater, 77 F.3d at 46; Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

9

e.g., Barnhart v. Thomas, 540 U.S. at 25, 124 S. Ct. at 379-80.[10/]

## II.   ALJ RUSSAK'S RFC DETERMINATION IS INCOMPATIBLE WITH THE JOBS CITED BY THE VOCATIONAL EXPERT

ALJ Russak's determination in the fifth and final step of the five step evaluation requires remand.  In the fifth step, the burden shifts to the Commissioner, "who must produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience and his training."  Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).[11/]

> In meeting her burden under the fifth step, the Commissioner:
>
> may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid".  The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.  Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy.  Generally the result listed in the Grid is dispositive on the issue of disability.

Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) (fn. omitted); see, e.g., Heckler v. Campbell, 461 U.S. 458, 461-62, 465-68, 103 S. Ct. 1952, 1954-55, 1956-58 (1983) (upholding the promulgation of the Grid); Roma v. Astrue, 468 F. App'x at 20-21; Martin v. Astrue, 337 F. App'x 87, 90 (2d Cir. 2009); Rosa v. Callahan, 168 F.3d at 78; Perez v. Chater, 77 F.3d 41, 46 (2d Cir.

---

[10/]   See also, e.g., Selian v. Astrue, 708 F.3d at 418; Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Rosa v. Callahan, 168 F.3d at 80; Perez v. Chater, 77 F.3d at 46; Berry v. Schweiker, 675 F.2d at 467.

[11/]   See, e.g., Roma v. Astrue, 468 F. App'x 16, 20 (2d Cir. 2012); Arruda v. Comm'r of Soc. Sec., 363 F. App'x 93, 95 (2d Cir. 2010); Butts v. Barnhart, 388 F.3d 377, 381 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

1996); Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

However, "relying solely on the Grids is inappropriate when nonexertional limitations 'significantly diminish' plaintiff's ability to work so that the Grids do not particularly address plaintiff's limitations." Vargas v. Astrue, 10 Civ. 6306, 2011 WL 2946371 at *13 (S.D.N.Y. July 20, 2011); see also, e.g., Travers v. Astrue, 10 Civ. 8228, 2011 WL 5314402 at *10 (S.D.N.Y. Nov. 2, 2011) (Peck, M.J.), R. & R. adopted, 2013 WL 1955686 (S.D.N.Y. May 13, 2013); Lomax v. Comm'r of Soc. Sec., No. 09-CV-1451, 2011 WL 2359360 at *3 (E.D.N.Y. June 6, 2011) ("Sole reliance on the grids is inappropriate, however, where a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations.'").

Rather, where the claimant's nonexertional limitations "'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d at 605); see also, e.g., Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) ("We have explained that the ALJ cannot rely on the Grids if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert."); Rosa v. Callahan, 168 F.3d at 82 ("Where significant nonexertional impairments are present at the fifth step in the disability analysis, however, 'application of the grids is inappropriate.'  Instead, the Commissioner 'must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" (quoting & citing Bapp v. Bowen, 802 F.2d at 603, 605-06)); Suarez v. Comm'r of Soc. Sec., No. 09-CV-338, 2010 WL 3322536 at *9 (E.D.N.Y. Aug. 20, 2010) ("If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." (quoting Zabala v. Astrue, 595 F.3d at 411)).

At the July 16, 2014 hearing, vocational expert Julie Andrews testified that a person of Rosario's age, education, work experience, and RFC could work as a preparer, a brake lining coater, or a label pinker. (R. 63-64.) A preparer

> [c]uts, saws, or breaks off gates from jewelry castings, using shears, jeweler's saw, pliers, or foot press equipped with cutting tool. Removes burrs and smooths rough edges of casting, using file or grinding wheel. Straightens distorted castings, using foot press equipped with shaping dies. May remove plaster from castings by dipping castings in water and acid solution.

<u>Dictionary of Occupational Titles</u> ("DOT") (4th ed. 1991) 700.687-062. A brake lining coater "[t]ends machine that automatically coats inside of brake lining with adhesive preparatory to bonding lining to brake shoe: Starts machine and conveyor and feeds brake lining into machine . . . ." DOT 574.685-010. A label pinker "[t]ends machine equipped with pinking attachment that cuts strips of labeling material into individual labels: Positions roll of material on holder and inserts end in feeding mechanism." DOT 585.685-062.

On appeal, Rosario argues that these jobs are incompatible with ALJ Russak's RFC finding. (Dkt. No. 13: Rosario Br. at 10-12; Dkt. No. 16: Rosario Reply Br. at 1-4.)

From the DOT descriptions alone, the Court cannot determine that the three jobs identified by the vocational expert are suitable for Rosario. ALJ Russak's RFC determination stipulated that Rosario "must avoid exposure to moving machinery . . . and exposure to chemicals." (R. 29.) Based on their descriptions, however, all three jobs appear to require Rosario to interact with moving machinery and two of the three also appear to require exposure to chemicals. A preparer uses a saw, a foot press cutting tool, or a grinding wheel and uses an acid solution; a brake lining coater tends a machine that utilizes a conveyor and parts that move automatically, and applies an adhesive; a label pinker feeds material into a machine that automatically cuts it. <u>See</u> DOT 700.687-062, DOT 574.685-010**,** DOT 585.685-062. The presence of machinery in each job

description (and chemicals in two of the three) would seem to preclude Rosario from working in the jobs proposed by the vocational expert.

Despite the apparent incompatibility between Rosario's RFC limitations as found by the ALJ and the proposed jobs, there is no information in the record explaining how or why Rosario nevertheless would be suited for these roles. The vocational expert simply asserted that an individual with Rosario's age, education, work experience, and RFC could perform the three listed jobs; the ALJ did not question the vocational expert as to the congruence between the proposed jobs and Rosario's nonexertional limitations. (See R. 60-65.) The vocational expert merely provided the job titles and their DOT codes during the hearing without an explanation of the job descriptions or the tasks required in each role. (R. 60-65.)[12]

On their face, the three job descriptions appear to require interaction with machinery (and use of chemicals), despite ALJ Russak's finding that Rosario's RFC prohibits her exposure to moving machinery and chemicals. As the Commissioner bears the burden of proving there is work the claimant can perform at the fifth step in the disability analysis, see Barnhart v. Thomas, 540 U.S. at 25, 124 S. Ct. at 379-80, the ALJ had the duty to sufficiently question the vocational expert to ensure that the suggested jobs align with the claimant's RFC profile. See, e.g., Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) ("Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial

---

[12] Additionally, the Court notes that the hearing transcript demonstrates communication problems during the vocational expert's telephonic testimony. (See R. 60-65.) At least seven times during the vocational expert's short telephonic testimony either she or the ALJ asked the other to start over or repeat something because the volume was too low or there was noise on the line. (R. 60-65.)

13

nature of a benefits proceeding.'" (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009), cert. denied, 559 U.S. 962, 130 S. Ct. 1503 (2010))). Where, as here, discrepancies between the RFC and the available jobs exist, further vocational expert testimony is needed to ensure that the claimant would be able to complete the tasks required in the proposed jobs. See, e.g., Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (remand ordered where RFC stipulated claimant could perform only sedentary work but jobs proffered by vocational expert required ability to perform light work); Santos v. Astrue, 709 F. Supp. 2d 207 (S.D.N.Y. 2010) (remand ordered where vocational expert's proffered jobs did not appear to align with the ALJ's RFC determination); Gravel v. Barnhart, 360 F. Supp. 2d. 442, 451-53 (N.D.N.Y 2005) ("[O]n the present record, and absent further clarification, the jobs stated by the [vocational expert] are irreconcilable with the RFC accepted by the ALJ, and do not constitute substantial evidence in support of his decision."); cf. Jasinski v. Barnhart, 341 F.3d 182, 185-86 (2d. Cir. 2003) (apparent discrepancy between DOT job description and the vocational expert's testimony did not require a remand because the expert provided a further, more specific explanation of the job requirements, constituting substantial evidence supporting the ALJ's decision).

The Court at this time cannot say that there is substantial evidence in the record to support the ALJ's determination that Rosario would be able to perform the three jobs proposed by the vocational expert. Additional testimony from a vocational expert is needed on the required tasks to ensure that the jobs are suitable, given Rosario's RFC. See also, e.g., Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004) ("[W]here the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate."); Donnelly v. Barnhart, 80 F. App'x. 701, 702 (2d Cir. 2003) ("Where the administrative record contains gaps, and when further findings would plainly lead to the proper disposition of the claim, a district court's remand to the

14

Commissioner for further development of the evidence is appropriate."); Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999) (When "further findings would so plainly help to assure the proper disposition of [the] claim . . . remand is particularly appropriate . . . .") (quotations omitted)).

Accordingly, the case is remanded to the SSA for further testimony on the requirements of the proposed jobs and their consistency with Rosario's RFC. Because the Court remands for further proceedings on this issue, it need not discuss Rosario's other arguments for reversal (which the SSA is free to address on remand).

## CONCLUSION

For the reasons discussed above, the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is DENIED, Rosario's motion for judgment on the pleadings (Dkt. No. 12) is GRANTED, and this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

Dated:     New York, New York
           July 13, 2016

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies ECF to:     All Counsel